**IN THE**

# United States Court of Appeals
# For the Federal Circuit

_____

SUPERIOR COMMERCIAL SOLUTIONS LLC,

*Plaintiff-Appellee*

v.

UNITED STATES,

*Defendant-Appellant.*

_____

On Appeal from the United States Court of International Trade,
Case No. 24-00052, Judge Jennifer Choe-Groves

---

## MOTION OF McCONWAY & TORLEY LLC FOR LEAVE TO FILE AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANT-APPELLANT

---

Daniel B. Pickard
Claire M. Webster
BUCHANAN INGERSOLL & ROONEY PC
1700 K Street NW, Suite 300
Washington, DC 20006
(202) 452-7900
daniel.pickard@bipc.com

*Counsel for* Amicus Curiae
*McConway & Torley LLC*

August 3, 2026

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 26-1376

**Short Case Caption** Superior Commercial Solutions LLC v. United States

**Filing Party/Entity** McConway & Torley LLC

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/03/2026

Signature: *Claire M. Webster*

Name: Claire M. Webster, Esq.

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| McConway & Torley LLC | | McConway & Torley LLC is wholly owned by FerroWorks LLC, which is a privately held corporation. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐     Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## MOTION FOR LEAVE TO FILE

Pursuant to Fed. R. App. P. 29 and Fed. Cir. R. 29, McConway & Torley LLC respectfully requests leave of the Court to file an *amicus curiae* brief in support of Defendant-Appellant's brief to assist the Court in reviewing this appeal. Counsel for McConway & Torley LLC has requested the consent of the parties for filing this motion, and neither Defendant-Appellant nor Plaintiff-Appellee provided a response.

Fed. R. App. P. 29 and Fed. Cir. R. 29 permit *amicus curiae* briefs if the movant can show an interest in the outcome of the litigation and that its brief is relevant to the court's decision. Appellate courts err on the side of granting motions for leave unless they obviously do not meet these criteria: "An amicus who makes a strong but responsible presentation in support of a party can truly serve as the court's friend." *Neonatology Assocs., P.A. v. Comm'r of Internal Revenue*, 293 F.3d 128, 133 (3d Cir. 2002).

McConway & Torley LLC is a U.S. producer of freight rail couplers, based in Pittsburgh, Pennsylvania. M&T is a member of the Coalition of Freight Coupler Producers ("CFCP"), along with the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("USW"). CFCP has been the petitioner in three trade remedy investigations filed with the U.S. Department of Commerce and the U.S. International Trade

Commission. One of these three cases resulted in a negative determination of injury to the domestic industry, one resulted in the imposition of an antidumping duty order on freight rail couplers ("FRCs") from Mexico and antidumping and countervailing duty orders on FRCs from China, and the third is ongoing as of the date of this motion. CFCP has also been an alleger in an Enforce and Protect Act ("EAPA") investigation involving the evasion of the Orders on FRCs from China and Mexico, in which a final affirmative determination of evasion was recently made.

As an alleger in a prior EAPA investigation and domestic producer with significant involvement in other antidumping and countervailing duty proceedings, McConway & Torley has a demonstrated interest in ensuring that antidumping and countervailing duty orders are enforced and that EAPA allegations remain a meaningful option to prevent continuing evasion of the U.S. trade remedy laws and hopes that its *amicus* argument will assist the Court in considering the Court of International Trade's misapplication of procedural due process with regard to EAPA investigations.

For the foregoing reasons, McConway & Torley LLC respectfully requests that the Court grant this motion and accept for filing the accompanying *amicus curiae* brief.

Respectfully submitted,

Dated: August 3, 2026

*/s/ Daniel B. Pickard*
Daniel B. Pickard
Claire M. Webster
BUCHANAN INGERSOLL & ROONEY PC
1700 K Street NW, Suite 300
Washington, DC 20006
(202) 452-7900
daniel.pickard@bipc.com

*Counsel for* Amicus Curiae
*McConway & Torley LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 26-1376

**Short Case Caption:** Superior Commercial Solutions LLC v. United States

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes __430__ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: __08/03/2026__         Signature: *Claire M. Webster*

Name: __Claire M. Webster, Esq.__

Save for Filing

**IN THE**

# United States Court of Appeals
# For the Federal Circuit

————————————

SUPERIOR COMMERCIAL SOLUTIONS LLC,

*Plaintiff-Appellee*

v.

UNITED STATES,

*Defendant-Appellant.*

————————————

On Appeal from the United States Court of International Trade,
Case No. 24-00052, Judge Jennifer Choe-Groves

---

**BRIEF OF McCONWAY & TORLEY LLC AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANT-APPELLANT**

---

Daniel B. Pickard
Claire M. Webster
BUCHANAN INGERSOLL & ROONEY PC
1700 K Street NW, Suite 300
Washington, DC 20006
(202) 452-7900
daniel.pickard@bipc.com

*Counsel for* Amicus Curiae
*McConway & Torley LLC*

August 3, 2026

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number**   26-1376

**Short Case Caption**   Superior Commercial Solutions LLC v. United States

**Filing Party/Entity**   McConway & Torley LLC

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/03/2026                    Signature:   *Claire M. Webster*

Name:        Claire M. Webster, Esq.

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| McConway & Torley LLC | | McConway & Torley LLC is wholly owned by FerroWorks LLC, which is a privately held corporation. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐     Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☑  None/Not Applicable ☐  Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐  Yes (file separate notice; see below)  ☐  No  ☑  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable ☐  Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

**Interest of Amicus Curiae** ................................................................1

**Summary of Argument**................................................................3

**Argument** ................................................................3

**Conclusion**................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Brock v. Roadway Express, Inc.*, 481 U.S. 252 (1987)............................... 11, 12, 13
*Ewing v. Mytinger & Casselberry*, 70 S. Ct. 870, 872, 339 U.S. 594, 598 (1950) .15
*Mathews v. Eldridge*, 424 U.S. 319 (1976) .................................................... *passim*
*Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).......................................................4
*Royal Brush Manufacturing, Inc. v. United States*, 75 F.4th 1250 (Fed. Cir. 2023) ...................................................................................................... 15, 16, 17
*Superior Commercial Solutions, LLC v. United States*, 811 F. Supp. 3d 1363 (Ct. Int'l Trade 2025) ................................................................................ 11, 12, 15

**Statutes**

19 U.S.C. § 1517(a)(6)(A) ...................................................................................5
19 U.S.C. § 1517(b)(2).........................................................................................5
19 U.S.C. § 1517(c)(1)(A) ...................................................................................7
19 U.S.C. § 1517(c)(1)(B) ...................................................................................7
19 U.S.C. § 1517(e) .......................................................................................6, 14
19 U.S.C. § 1517(f)............................................................................................10
19 U.S.C. § 1517(g) ...........................................................................................10

**Other Authorities**

*Certain Freight Rail Couplers and Parts Thereof From Mexico: Antidumping Duty Order*, 88 Fed. Reg. 78,308 (Nov. 15, 2023)....................................................2
*Certain Freight Rail Couplers and Parts Thereof From the Czech Republic and India: Initiation of Less-Than-Fair-Value Investigations*, 90 Fed. Reg. 40,059 (Aug. 18, 2025) ...............................................................................................2
*Certain Freight Rail Couplers and Parts Thereof From the People's Republic of China and Mexico: Initiation of Less-Than-Fair-Value Investigations*, 87 Fed. Reg. 64,444 (Oct. 25, 2022)..................................................................................2
*Certain Freight Rail Couplers and Parts Thereof From the People's Republic of China: Antidumping Duty Order*, 88 Fed. Reg. 45,138 (July 14, 2023) ...............2
*Certain Freight Rail Couplers and Parts Thereof From the People's Republic of China: Countervailing Duty Order*, 88 Fed. Reg. 45,135 (July 14, 2023) ...........2
*Freight Rail Coupler Systems and Certain Components Thereof From the People's Republic of China: Initiation of Less-Than-Fair Value Investigation*, 86 Fed. Reg. 58,864 (Oct. 25, 2021)..................................................................................1

*Freight Rail Coupler Systems and Components From China*, 87 Fed. Reg. 41,144 (July 11, 2022) ..........................................................................................1

*Investigation of Claims of Evasion of Antidumping and Countervailing Duties*, 81 Fed. Reg. 56,477 (Aug. 22, 2016) ..................................................6, 10

*Investigation of Claims of Evasion of Antidumping and Countervailing Duties*, 89 Fed. Reg. 19,239 (Mar. 18, 2024)..................................................17

**Regulations**

19 C.F.R. § 159.58 ..........................................................................................14

19 C.F.R. § 165.1 ............................................................................................5

19 C.F.R. § 165.15(a)......................................................................................5

19 C.F.R. § 165.15(b) ......................................................................................5

19 C.F.R. § 165.23(a)......................................................................................6

19 C.F.R. § 165.23(b) ..................................................................................7, 10

19 C.F.R. § 165.24(a)......................................................................................5

19 C.F.R. § 165.24(b)(1)..................................................................................6

19 C.F.R. § 165.24(b)(2)..................................................................................6

19 C.F.R. § 165.24(c)......................................................................................6

19 C.F.R. § 165.25 ..........................................................................................7

19 C.F.R. § 165.26 ......................................................................................7, 10

19 C.F.R. § 165.27(c)......................................................................................7

19 C.F.R. § 165.28 ..........................................................................................7

## STATEMENT OF AUTHORSHIP AND FUNDING

No counsel for a party authored this brief in whole or in part, no party or counsel for a party contributed money to fund preparing or submitting this brief, and no person other than the *amicus curiae* contributed money intended to fund preparing or submitting this brief. *See* Fed. R. App. P. 29(a)(4)(E).

**Interest of Amicus Curiae**

*Amicus curiae* McConway & Torley LLC ("M&T") is a U.S. producer of freight rail couplers, based in Pittsburgh, Pennsylvania. M&T is a member of the Coalition of Freight Coupler Producers ("CFCP"), along with the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("USW"). CFCP has been the petitioner in three trade remedy investigations filed with the U.S. Department of Commerce and the U.S. International Trade Commission. Namely, CFCP filed an antidumping and countervailing duty petition on freight rail coupler systems and certain components thereof from the People's Republic of China on September 29, 2021. *See, e.g.*, *Freight Rail Coupler Systems and Certain Components Thereof From the People's Republic of China: Initiation of Less-Than-Fair Value Investigation*, 86 Fed. Reg. 58,864 (Oct. 25, 2021). Those investigations ended with a negative determination of injury by the U.S. International Trade Commission. *See generally Freight Rail Coupler Systems and Components From China*, 87 Fed. Reg. 41,144 (July 11, 2022).

CFCP filed antidumping duty petitions on certain freight rail couplers and parts thereof from the People's Republic of China and Mexico, and an accompanying countervailing duty petition on the same merchandise from China, on September 28, 2022. *See, e.g.*, *Certain Freight Rail Couplers and Parts Thereof From the People's Republic of China and Mexico: Initiation of Less-Than-Fair-*

1

*Value Investigations*, 87 Fed. Reg. 64,444 (Oct. 25, 2022). Antidumping duty orders on freight rail couplers and parts thereof from China and Mexico and a countervailing duty order on the same from China are in effect. *Certain Freight Rail Couplers and Parts Thereof From the People's Republic of China: Antidumping Duty Order*, 88 Fed. Reg. 45,138 (July 14, 2023); *Certain Freight Rail Couplers and Parts Thereof From the People's Republic of China: Countervailing Duty Order*, 88 Fed. Reg. 45,135 (July 14, 2023); *Certain Freight Rail Couplers and Parts Thereof From Mexico: Antidumping Duty Order*, 88 Fed. Reg. 78,308 (Nov. 15, 2023).

CFCP filed antidumping duty petitions on freight rail couplers and parts thereof from the Czech Republic and India, and an accompanying countervailing duty petition on the same merchandise from India, on July 23, 2025. *See Certain Freight Rail Couplers and Parts Thereof From the Czech Republic and India: Initiation of Less-Than-Fair-Value Investigations*, 90 Fed. Reg. 40,059 (Aug. 18, 2025). These investigations are ongoing.

CFCP has also been an alleger in an Enforce and Protect Act ("EAPA") investigation, in which a final affirmative determination of evasion was recently made. U.S. Customs and Border Protection, *EAPA Case 8183 – Notice of Determination as to Evasion* (May 18, 2026). Accordingly, M&T is a domestic producer, with significant involvement in antidumping and countervailing duty proceedings and, specifically, in EAPA proceedings. M&T has a demonstrated

interest in ensuring that antidumping and countervailing duty orders are enforced and that EAPA allegations remain a meaningful mechanism to prevent continuing evasion of the U.S. trade remedy laws.

## Summary of Argument

The Court of International Trade below failed to consider the requisite balancing of interests in determining whether a party is owed procedural due process. The three factors, as articulated in *Mathews v. Eldridge*, weigh in favor of ensuring that the existence of an Enforce and Protect Act investigation remains confidential from the suspected evader at issue until U.S. Customs and Border Protection imposes interim measures in that investigation. Contrary to the Court of International Trade's opinion, there is not an immutable right to be heard before a temporary deprivation of a right and, here, neither the plaintiff nor the court below in its opinion has identified exactly what property or liberty right it claims had been deprived. For these reasons, as discussed further below, we write in support of the Government.

## Argument

Rather than grapple with what constitutes due process in EAPA investigations, the U.S. Court of International Trade's opinion below assumes as a foregone conclusion that the imposition of interim measures in an EAPA investigation at the same time that the importer subject to the investigation is notified

of the investigation's existence deprives the importer of a meaningful opportunity to respond to the allegations against it. This is not so. "Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

*Mathews v. Eldridge*, 424 U.S. 319 (1976), is the seminal authority on procedural due process. There, the Supreme Court articulated that:

> {T}he specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. The Court of International Trade failed to engage in any such balancing test. A consideration of the three relevant factors shows that suspected evaders are not deprived of their procedural due process by notification of the existence of an investigation against them at the same time as the imposition of interim measures.

Before applying the three factors to the EAPA context, consider the EAPA procedures at issue here. EAPA empowers an "interested party" – essentially defined as a foreign producer, domestic manufacturer or producer, union representing workers engaging in domestic manufacture, or trade association of domestic manufacturers, with relation to the covered merchandise or the applicable domestic like product – to file an allegation that a "person has entered covered merchandise

into the customs territory of the United States through evasion . . . ." 19 U.S.C. §§ 1517(a)(6)(A), (b)(2). CBP's regulations separately define "parties to the investigation" as the interested party or parties that filed the allegation of evasion and the importer or importers who engaged in evasion. 19 C.F.R. § 165.1.

Upon receipt of an allegation of evasion, CBP will determine whether to initiate an investigation no later than the fifteenth business day after the date on which an allegation is received. *Id.* § 165.15(a). The criteria for initiation are that (1) the covered merchandise described in the allegation is properly in the scope of an antidumping or countervailing duty order and that (2) the information provided in the allegation "reasonably suggests that the covered merchandise has been entered for consumption into the customs territory of the United States through evasion . . . ." *Id.* § 165.15(b). Between initiation and the imposition of interim measures, CBP undertakes a fact-finding process that includes review of the allegation, analysis of import data, and sometimes the issuance of CBP Form 28s, Requests for Information. If CBP determines to initiate an investigation, then it will impose interim measures within 90 days after initiation, only if there is a reasonable suspicion that the importer entered covered merchandise into the United States by means of evasion. *Id.* § 165.24(a). The effect of interim measures is that, for unliquidated entries, liquidation will be suspended, the period for liquidation of each entry will be extended, and that CBP will take any additional measures it deems

necessary, including "requiring a single transaction bond or additional security or the posting of a cash deposit with respect to such covered merchandise." 19 U.S.C. § 1517(e); 19 C.F.R. § 165.24(b)(1). For liquidated entries, CBP has the discretion to "initiate or continue any appropriate measures separate from this proceeding." 19 C.F.R. § 165.24(b)(2). If CBP imposes interim measures, its regulations require it to issue a notice of its decision to the parties to the investigation – including, by definition, the importer(s) alleged to have entered covered merchandise through evasion – within five business days after taking interim measures. *Id.* § 165.24(c).

In its interim rule implementing regulations to set forth procedures for investigating claims of evasion of antidumping and countervailing duty orders, CBP explained that it "will use this 95 calendar-day period in order to investigate the allegation. This timeframe for notification takes into account the dual considerations of transparency and the need to provide adequate time for CBP's investigatory process." *Investigation of Claims of Evasion of Antidumping and Countervailing Duties*, 81 Fed. Reg. 56,477, 56,480 (Aug. 22, 2016).

After interim measures are imposed, CBP undertakes a further fact-finding process. The relevant regulation states that, "In making a {final} determination under {19 C.F.R.} § 165.27, CBP may require additional information as is necessary, from . . ." the interested party that filed the allegation and/or the importer that allegedly engaged in evasion, among others. 19 C.F.R. § 165.23(a). Its regulations

6

further provide for voluntary submissions of factual information: "The parties to the investigation may submit additional information in order to support the allegation of evasion or to negate or clarify the allegation of evasion." *Id.* § 165.23(b). CBP's investigation may also include verification of information provided to it, *id.* § 165.25, as well as submission of formal written arguments by parties to the investigation, *id.* § 165.26. CBP must make a final affirmative determination of evasion or not within 300 days after initiation of the investigation, or 360 days if the investigation is deemed to be "extraordinarily complicated." 19 U.S.C. § 1517(c)(1)(A) – (B). Accordingly, as a party to the investigation, the importer alleged to have entered covered merchandise by evasion has an opportunity to participate fully in providing factual information and written argument in the investigation for the duration of the time between the imposition of interim measures and the final determination of evasion, *i.e.*, for either 205 or 265 days.

In the event of an affirmative determination of evasion, then CBP will assess duties owed. This includes suspension of liquidation of entries made after the imposition of interim measures, identification of the applicable antidumping or countervailing duty rates for the covered merchandise, and posting of cash deposits on entries of covered merchandise. 19 C.F.R. § 165.28. In the event of a negative determination of evasion, then "CBP will cease applying any interim measures . . . and liquidate the entries in the normal course." *Id.* § 165.27(c).

We now take each of the *Mathews* factors in turn. First, the private interest that will be affected by the official action. *Mathews*, 424 U.S. at 335. In an EAPA investigation, the private interest of the importer is merely any right to be aware of the investigation before liquidation of its entries may be suspended and before payment of a bond may be due. In *Mathews* itself, a case that involved social security benefits, the Court found that, "Since a recipient whose benefits are terminated is awarded full retroactive relief if he ultimately prevails, his sole interest is in the uninterrupted receipt of this source of income pending final administrative decision on his claim." *Mathews*, 424 U.S. at 340. A suspected evader's interest in an EAPA investigation may be even less than this. If CBP imposes interim measures in an EAPA investigation but later makes a negative determination of evasion, then interim measures are ceased. Any temporary deprivation experienced by a suspected evader is truly temporary, since it can be reversed if CBP makes a final negative determination. While interim measures can include payment of a bond to CBP, these monies would be refunded if there is no evasion found in CBP's final determination.

There is a second private right in an EAPA investigation: the right of the alleger in ensuring that there is not unlawful evasion of an antidumping duty order. Interim measures in an EAPA investigation suspend liquidation, ensuring that the alleger's rights in enforcing an Order are not permanently prejudiced. The alleger's interest stems from the fact that merchandise at issue in an EAPA investigation has

already been found to be unfairly priced and injurious to the domestic industry, and the allegation is supported by a reasonable suspicion of evasion of lawful payment of duties. This suspension of liquidation ensures that the status quo ante remains unchanged and prevents irreparable harm to the alleger.

The second *Mathews* factor concerns the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards. *Mathews*, 424 U.S. at 335. This, too, is a fact-specific inquiry. Here, there is no risk of erroneous deprivation, since there is no property or liberty interest in a suspension of liquidation or in posting a bond or deposit, as none of these agency decisions is permanent. Even if there were an erroneous deprivation at issue, in an EAPA investigation, the question would be: if an importer were to have earlier notice of the existence of an EAPA investigation, would that notice be less likely to lead to erroneous imposition of interim measures? There is no indication that the answer to this question would be "yes." A suspected evader's awareness of an EAPA investigation prior to the imposition of interim measures would not meaningfully prevent an erroneous outcome, because CBP is engaged in an appropriate review of preliminary evidence. As to "the probable value, if any, of additional or substitute procedural safeguard," such early notice would, as discussed below, frustrate the Congressional purpose of EAPA. The court below is essentially saying that, when the Government first starts to investigate unlawful

activity, it must immediately notify the suspected bad actor. This position is not supported by any of the caselaw. Moreover, there are later additional safeguards to ensure that there is no permanent erroneous deprivation in an EAPA investigation, including voluntary submission of evidence, 19 C.F.R. § 165.23(b); opportunity for briefing, *id.* § 165.26; and the ability of a party to request that the Commissioner conduct de novo "administrative review" of the final determination of evasion, 19 U.S.C. § 1517(f). After CBP conducts an administrative review, an aggrieved party may then file an appeal of the determination with the U.S. Court of International Trade. *Id.* § 1517(g).

Finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 335. The Government has a compelling interest in keeping its initial investigation confidential. It has stated as much, saying, "This timeframe for notification takes into account the dual considerations of transparency and the need to provide adequate time for CBP's investigatory process." *Investigation of Claims of Evasion of Antidumping and Countervailing Duties*, 81 Fed. Reg. 56,477, 56,480 (Aug. 22, 2016). Enforce and Protect Act investigations determine whether there is evasion of payment of lawfully owed monies to the U.S. government, and keeping the initial investigation confidential from the suspected evader under investigation is essential for the

successful enforcement of U.S. law. If the government were to inform a suspected evader of the existence of an EAPA investigation against it prior to the institution of interim measures, it would deprive CBP of the ability to independently review the conduct. This step is crucial in an EAPA investigation, as it allows CBP to review the suspected evader's entries and what they have or have not declared to CBP upon import. Indeed, advance notice to a company that is about to be investigated would provide any bad actor with the opportunity to halt and potentially cover up the behavior under investigation, including potentially destroying relevant evidence.

In sum, there are private interests of the alleger in pursuing enforcement of trade remedy orders, as well as the private interest of the company that is engaging in duty evasion. In addition, the other two *Mathews* factors weigh highly in favor of the government's interest, and the government has a compelling interest in ensuring that the EAPA investigation process remains private until the completion of its preliminary investigation.

The Court of International Trade acknowledged the below-Plaintiff's argument that *Brock v. Roadway Express, Inc.*, 481 U.S. 252 (1987), stands for the proposition that a "'meaningful opportunity to be heard' means *before* the imposition of interim measures." *Superior Commercial Solutions, LLC v. United States*, 811 F. Supp. 3d 1363, 1376 (Ct. Int'l Trade 2025). The Court below then "agree{d} with Plaintiff's argument that a meaningful opportunity to respond should

11

happen before a temporary deprivation takes effect, not afterwards." *Id.* While *Brock* does address a temporary deprivation perhaps akin to the imposition of interim measures in an EAPA investigation, this position overstates the holding in *Brock*.

*Brock* does not stand for the proposition that a party always has a due process right to have a meaningful opportunity to respond before any temporary deprivation. Indeed, in that case, the Supreme Court found that, "{d}etermining the adequacy of predeprivation procedures requires consideration of the Government's interest in imposing the temporary deprivation, the private interests of those affected by the deprivation, the risk of erroneous deprivations through the challenged procedures, and the probable value of additional or substitute procedural safeguards." *Brock*, 481 U.S. at 262. These factors are identical to the *Mathews* factors examined above. That is, *Brock* explicitly allows preliminary penalties if existing procedures establish an initial check against mistaken decisions and final review is available.

The Court of International Trade's opinion notes the Plaintiff-Appellee's citation of the following line from *Brock*: "{T}he constitutional requirement of a meaningful opportunity to respond before a temporary deprivation may take effect entails, at a minimum, the right to be informed not only of the nature of the charges but also of the substance of the relevant supporting evidence." *Brock*, 481 U.S. at 264-65.

*Brock* itself was a case about temporary deprivation of an employer's right to discharge an employee. The Supreme Court found that, "minimum due process for the employer in this context requires notice of the employee's allegations, notice of the substance of the relevant supporting evidence, an opportunity to submit a written response, and an opportunity to meet with the investigator and present statements from rebuttal witnesses." *Id.* at 264. That is, in the context of *Brock*, and relying on other employment cases, that "constitutional requirement" should be read to be limited to temporary deprivations in employment cases.

*Brock* said as much, stating that "we conclude that the employer is sufficiently protected by procedures that do not include an evidentiary hearing before the discharged employee is temporarily reinstated. So long as the pre-reinstatement procedures establish a reliable 'initial check against mistaken decisions,' . . . and complete and expeditious review is available, then the preliminary reinstatement provision of § 405 fairly balances the competing interests of the Government, the employer, and the employee, and a prior evidentiary hearing is not otherwise constitutionally required." *Brock*, 481 U.S. at 263 (internal citations omitted).

That *Brock* had to do with contractual rights to terminate an employee is a germane distinction from EAPA investigations, which are a matter of law enforcement. The Enforce and Protect Act itself provides the following as to interim measures:

Not later than 90 calendar days after initiating an investigation under subsection (b) with respect to covered merchandise, the Commissioner shall decide based on the investigation if there is a reasonable suspicion that such covered merchandise was entered into the customs territory of the United States through evasion and, if the Commissioner decides there is such a reasonable suspicion, the Commissioner shall—

(1) suspend the liquidation of each unliquidated entry of such covered merchandise that entered on or after the date of the initiation of the investigation;

(2) pursuant to the Commissioner's authority under section 504(b), extend the period for liquidating each unliquidated entry of such covered merchandise that entered before the date of the initiation of the investigation;

(3) pursuant to the Commissioner's authority under section 623, take such additional measures as the Commissioner determines necessary to protect the revenue of the United States, including requiring a single transaction bond or additional security or the posting of a cash deposit with respect to such covered merchandise.

19 U.S.C. § 1517(e). None of these actions is a deprivation of a property or liberty interest. Namely, suspension of liquidation is not a denial of a property or liberty interest; it is a routine tool used in antidumping and countervailing duty investigations and other trade proceedings when the amount of the duty owed on certain merchandise is in dispute during the proceeding. *See* 19 C.F.R. § 159.58. Extending the period for liquidating an unliquidated entry, under subsection (2) is similarly routine and is reflective of the fact that the duty amount owed is currently being contested. Third, the posting of a bond or cash deposit helps to maintain the status quo ante.

14

Moreover, the court below invalidated Customs' suspension of liquidation, finding that, any entries entered after September 29, 2022 (the date on which the EAPA investigation should have been initiated under the statutory deadline) shall not be subject to cash deposits or any final measures found to be warranted by reason of the unlawful duty evasion. *Superior Commercial Solutions*, 811 F. Supp. 3d at 1377. As noted above, the parties involved in duty evasion do not have a liberty or property right in suspension of liquidation, so it is impossible for lifting a suspension of liquidation to remedy a deprivation of any property right.

Courts have recognized that administrative agencies can impose preliminary or protective measures without a hearing if they are necessary to prevent harm and are not punitive. "At times a preliminary determination by an agency is a step in an administrative proceeding. We have repeatedly held that no hearing at the preliminary stage is required by due process so long as the requisite hearing is held before the final administrative order becomes effective." *Ewing v. Mytinger & Casselberry*, 70 S. Ct. 870, 872, 339 U.S. 594, 598 (1950).

Accordingly, there is no legal requirement for a right to be heard before a preliminary decision is made, and the court below has attempted to read such a requirement into the EAPA statute.

The Court of International Trade's opinion relies in part on *Royal Brush Manufacturing, Inc. v. United States*, 75 F.4th 1250 (Fed. Cir. 2023). This Court was

presented with a due process question in that case as well, and an examination of the facts and outcome of that case is warranted here. In *Royal Brush*, importer Royal Brush contended that it had a due process right to review redacted evidence that had been used against it in an Enforce and Protect Act proceeding at U.S. Customs and Border Protection, and that its inability to do so deprived it of due process under the Fifth Amendment. *Id.* at 1257. This Court agreed. However, the Court's determination in *Royal Brush* hinged on the fact that CBP did not provide the importer with confidential information that it used to make its final determination. *Id.* at 1259.

The government had further argued that it could not institute protective orders in EAPA investigations absent authorization by law. *Id.* at 1260. The Court found, however, that CBP has inherent authority to provide protective orders in EAPA proceedings and that no direct authorization of law was required. *Id.* at 1262. Furthermore, in response to the government's argument that Royal Brush had not shown that a lack of access to confidential information had shown it prejudice, the Court found that, "when a due process violation has occurred because of a denial of access to new and material information upon which an agency relied, no additional showing of prejudice is required." *Id.*

In *Royal Brush*, this Court noted the "'relatively immutable' principle of due process . . . that 'where governmental action seriously injures an individual, and the

reasonableness of the action depends on fact findings, the evidence used to prove the {g}overnment's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." *Id.* at 1257 (*quoting Greene v. McElroy*, 360 U.S. 474, 496 (1959)).

That is, the due process violations that occurred in *Royal Brush* concerned an importer's right to see the specific evidence being used in a <u>final</u> determination made against it. These concerns have since been absolved with EAPA's institution of administrative protective orders in its investigations. *See Investigation of Claims of Evasion of Antidumping and Countervailing Duties*, 89 Fed. Reg. 19,239, 19,251 (Mar. 18, 2024) (explaining changes to CBP's regulations to institute protective orders in EAPA investigations, following the *Royal Brush* opinion). In answering the question, "what process is due?" to an importer in an EAPA investigation, *Royal Brush* fulfills the process that is due. Under current law, once importers are made aware of an EAPA investigation, they are able to review and comment on the information being used against them and, if they prove that they are not entering covered merchandise into the United States by means of evasion and a negative final determination of evasion is made, then the interim measures are revoked and there is no lasting impact to the importer. In the case at bar, the company at issue had in fact been found to have engaged in unlawful duty evasion and was provided access to the confidential information supporting that determination, was provided

opportunities to supplement the factual record, provided legal briefs on the pertinent issues, and has afforded itself of opportunities for both administrative and judicial review.

## Conclusion

*Amicus Curiae* McConway & Torley LLC writes in support of the Government and respectfully requests that the Court reverse the trial court's holding that an importer's due process rights were violated by imposition of interim measures and remand this case to the United States Court of International Trade for further consideration.

Dated: August 3, 2026

Respectfully submitted,

*/s/ Daniel B. Pickard*
Daniel B. Pickard
Claire M. Webster
Buchanan Ingersoll & Rooney PC
1700 K Street, NW, Suite 300
Washington, DC 20006
(202) 452-7900
daniel.pickard@bipc.com

*Counsel for Amicus Curiae*
*McConway & Torley LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 26-1376

**Short Case Caption:** Superior Commercial Solutions LLC v. United States

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes __4,231__ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: __08/03/2026__

Signature: *Claire M. Webster*

Name: Claire M. Webster, Esq.

Save for Filing